SAUTORA v. CALLAN ET AL.

*Suretyship—Official bond—Liability for acts under color of office—Bystander shot by policeman off duty.*

A police officer, without warrant or process of any kind, when not on duty in citizen's clothes, arrested several persons who were not charged with any offense and had committed none. He also, immediately after such arrests, started in pursuit of one of such persons who had escaped from him, and while engaged in such pursuit fired his revolver and shot a bystander. *Held*: The officer was acting under color of office and the surety on his official bond for the faithful performance of his duties was liable for damages done to such bystander.

(Decided March 12, 1924.)

ERROR: Court of Appeals for Cuyahoga county.

*Mr. William J. Corrigan,* for plaintiff in error.
*Mr. R. T. Miller,* for defendant in error.

SAYRE, J. On October 16, 1920, the defendants below, defendants in error here, gave bond to the city of Cleveland in the sum of $1,000 conditioned for the faithful performance by Callan of his duties as policeman in such city. During his term of office, on November 18, 1921, Callan, while not on duty and in citizen's clothes, and while intoxicated, on one of the streets of the city and in a locality where he was accustomed to perform his duties, arrested three persons who had committed no offense whatever and were peaceably going about their affairs. One of those persons, desiring to get away from Callan, began to run. Callan started in pursuit, drew his pistol, and fired sev-

eral shots in the direction of such person (Peppers by name), one of which entered the leg of the plaintiff, who was standing near. This suit was brought against both defendants, Callan, and his surety, the United States Fidelity & Guaranty Company, to recover damages resulting from the wound inflicted by Callan. It was admitted on the trial that Callan's regular hours for the performance of his duties were from 9 a. m. until 5 p. m., and that the occurrence referred to took place in the evening after 5 p. m. The trial court, on motion, at the close of plaintiff's evidence, directed a verdict in favor of the defendant United States Fidelity & Guaranty Company. Whether such action by the court was erroneous is the sole question for our determination.

It is claimed in support of the ruling of the trial court that because Callan was not on duty at the time of the shooting, and because he was intoxicated and running amuck, he was not in the performance of any duties in connection with his office, and that there was no act done by him under color of office.

Were the acts of Callan done *colore officii?* If so the surety company is liable. *State* v. *Griffith,* 74 Ohio St., 80, 94; *Story* v. *Jennings,* 4 Ohio St., 418, and *Drolesbaugh* v. *Hill,* 64 Ohio St., 257. The whole difficulty lies in what is meant by color of office, or color of authority. In the case of *State* v. *Mankin,* 68 W. Va., 772, 70 S. E., 764, a constable, without warrant or process, killed a person who had committed no offense and the following definition appears in the syllabus:

"An act done '*colore officii*' is an act done, not only by an officer professing to act as such, but

also under color of authority to act in and about the particular matter in connection with which it was done.''

In the opinion it is said that if the officer ''assumes to make an arrest without a warrant or writ of any kind, and, in the absence of any conduct in his presence that might honestly be construed by him to be an offense, it seems clear that he acts without even color of authority.''

In view of this language the motion to direct the verdict in the instant case was properly sustained.

However, in the case of *McCain* v. *Des Moines,* 174 U. S., 168, 43 L. Ed., 936, quoting *Iowa* v. *Des Moines,* 96 Iowa, 52, it is said that:

'' 'Color of law' does not mean actual law. 'Color' as a modifier, in legal parlance, means 'appearance as distinguished from reality.' Color of law means 'mere semblance of legal right.' ''

''The term 'color' means 'semblance,' 'show,' 'pretense,' 'appearance,' and implies, in the language of the law, that the thing to which it is applied has not the real character imputed to it. Hence, to give 'color of title,' in pleading, is to allege a fictitious matter, which gives the appearance of title, and is avoided by allegations setting up the real and valid title. So, in criminal law, the term 'color of office' implies 'a wrong committed by an officer under the pretended authority of his office.' Bouvier's Dictionary.'' *Chicago, R. I. & P. Ry. Co.* v. *Allfree,* 64 Iowa, 500, 503, 20 N. W., 779, 780.

''Color of office is defined as characterizing an act wrongfully done by an officer under the pre-

tended authority of his office.'' *Decker* v. *Judson*, 16 N. Y., 439, 442.

In the case of *Clancey* v. *Kenworthy*, 74 Iowa, 740, 35 N. W., 427, it appears from the special verdict that the plaintiff had committed no offense when arrested, that the arrest was without warrant or process; but the court held that the arrest and mistreatment of the plaintiff were under color of office.

In *Lee* v. *Charmley*, 20 N. D., 570, 129 N. W., 448, a deputy sheriff went to the home of one Brown, about 11:30 p. m., arrested him and took him into custody. It is averred in the complaint that Brown had committed no crime, that no charge had been made against him, and that the officer had no warrant for his arrest. The court held that the officer acted under color of his office and that his sureties were liable.

Now in our case Callan had authority to make arrests if armed with a warrant, or if he found a person in the commission of a crime, and he had authority to pursue and bring back a person lawfully arrested who had escaped and was fleeing from him; but he had no authority to arrest persons without warrant, who, he knew, had committed no offense, neither had he authority to pursue and bring back a person running from him who had committed no offense and who he knew had been arrested without any cause therefor. In making the arrests he did make, and in pursuing Peppers, he was pretending to exercise his authority as a policeman, and it was in the pretended exercise of such authority that he injured the plaintiff. He was, therefore, in our judgment, acting under color of his office.

It seems to us that because Callan was not on duty at the time of the trouble the surety is not released, since as a police officer he had authority to make arrests in the city of Cleveland at any time. An arrest by him while off duty would not for that reason be illegal. His bond was given for the faithful performance by him of his duties, that is, for the faithful exercise of the power conferred upon him by law as an officer. Now a pretended or wanton exercise of such power was not the act of Callan as an individual, but as an officer, and it was an unlawful and wrongful act as such officer, and for this his surety is clearly liable.

The motion to direct the verdict was improperly sustained and the judgment will be reversed.

*Judgment reversed.*

MIDDLETON, P. J., and MAUCK, J., concur.

Judges of the Fourth Appellate District, sitting in place of Judges VICKERY, LEVINE and SULLIVAN, of the Eighth Appellate District.